[Civ. No. 11857.   First Dist., Div. Two.   Jan. 12, 1942.]

Estate of HERBERT A. SCHMIDT, Deceased.   THE PEOPLE, Appellant, v. MARIAN S. DILL, Individually and as Executrix, etc., et al., Respondents.

James W. Hickey, Inheritance Tax Attorney, A. W. Brouillet, Deputy Inheritance Tax Attorney, and W. Urie Walsh and Richard C. O'Connor, Assistants Deputy Inheritance Tax Attorney, for Appellant.

Hugo D. Newhouse and Russell P. Tyler for Respondents.

SPENCE, J.—This is an appeal from a judgment entered after a trial by jury of the issues presented by objections to the report of the inheritance tax appraiser and from the order entered pursuant to said judgment modifying said report and fixing the inheritance tax at a sum less than that fixed by the inheritance tax appraiser. There is also an appeal from the order denying the motion to disallow the costs claimed by the objectors.

The controversy involved the question of the taxability of a certain transfer made during his lifetime by Herbert A. Schmidt, deceased, to his wife, Marian S. Schmidt, now

Marian S. Dill. Said transfer was made in 1927 and it involved 2025 shares of the stock of the Pacific Lighting Corporation. The report of the inheritance tax appraiser found that said transfer ''was a gift made in contemplation of death and intended to take effect in possession and enjoyment as to said Marian S. Schmidt at or after the death of said Herbert A. Schmidt, and that said gift was made without valuable and adequate consideration.'' Pursuant to said finding, the inheritance tax appraiser included the value of said stock in the sum upon which inheritance tax was computed. The objectors filed written objections denying the material facts found by the inheritance tax appraiser and affirmatively alleging certain facts and circumstances relating to said transfer. The objectors claimed that said transfer was made for a valuable and adequate consideration; that it was not made in contemplation of death; and that it was not intended to take effect in possession or enjoyment at or after the death of the deceased.

Upon the trial, appellants abandoned the claim that said transfer was made in contemplation of death and relied upon the other grounds set forth in the findings made by the inheritance tax appraiser. The jury returned a special verdict answering the two questions submitted to it. By its first answer, it found that said transfer was made for a valuable and adequate consideration within the meaning of the inheritance tax act. By its second answer, it found that said transfer was made without any reservation or intention that it was to take effect in possession or enjoyment at or after the death of the deceased. The above mentioned judgment and order were entered in conformity with the special verdict of the jury. The effect thereof was to eliminate any tax upon said transfer to Mrs. Schmidt of the 2025 shares of stock of Pacific Lighting Corporation.

The main contentions of appellants on this appeal are that the evidence was insufficient to show that said transfer was made for a valuable and adequate consideration or to show that said transfer was made without any reservation or intention that it take effect in possession or enjoyment at or after the death of the deceased. In this connection, it is conceded that if the evidence was sufficient to sustain the answer of the jury to either the first or second question submitted to it, then the evidence was sufficient to sustain the judgment and

order. In other words, under what is referred to by appellants as the "Inheritance Tax Act of 1929," said transfer was admittedly not taxable if it was made for a "valuable and adequate consideration (i. e., a consideration in money or in money's worth to the full value of the property transferred)" and further said transfer was admittedly not taxable, even if it constiuted a gift without any consideration, unless it was made either "(a) In contemplation of the death of the . . . donor, or, (b) Intended to take effect in possession or enjoyment at or after such death." (See 1931 Deering's General Laws, Act 8443, section 2, subdivision 3.) As above stated appellants' claim that the transfer was made in contemplation of death was abandoned on the trial and said claim is not argued on this appeal.

■ Our review of the record convinces us that there was ample evidence to show that said transfer was made without any reservation and without any intention that it should take effect in possession or enjoyment at or after the death of the deceased. This conclusion renders it unnecessary to determine the question of whether the evidence was sufficient to show that said transfer was made for a valuable and adequate consideration within the meaning of the inheritance tax act. We will nevertheless briefly summarize the evidence introduced on both issues as some of the evidence relating to the issue of consideration had some bearing upon the issue of when the parties intended the transfer to take effect.

Herbert A. Schmidt, deceased, was a young architect at the time of his marriage to Marian S. Schmidt in 1915. He was the son of wealthy and elderly parents who had assured him that he would inherit their entire estate. He had been given an extensive education but was discouraged concerning his progress in his chosen profession. He was anxious to marry Mrs. Schmidt and, prior to the marriage, he freely discussed with her his inability to support the two of them on his earnings. He also discussed these matters with his parents. His parents were anxious that he should marry and therefore promised to give him a monthly allowance in the event of his marriage and again assured him that he would inherit all of their property. In proposing marriage to Mrs. Schmidt, the deceased promised that if she would marry him, he would transfer to her as her separate property, when he received his promised inheritance, an amount equiva-

lent to one-third of said inheritance. In reliance upon said promise, Mrs. Schmidt consented to the marriage and the marriage took place in 1915.

About one year after said marriage, the parties had another conversation regarding their affairs. Mr. Schmidt was not succeeding in his profession as well as he had hoped and he suggested a plan which involved the deferring of any prospect of accumulating community property at least for some time to come. He reminded Mrs. Schmidt of his antenuptial promise concerning his inheritance and the result of the conversation was that Mrs. Schmidt consented to the plan proposed.

The mother of Mr. Schmidt died in 1921 and the father of Mr. Schmidt died in 1925. After the estate of the father went through probate, all of the property of his parents was distributed to him in the latter part of 1926. Mr. Schmidt had thereby inherited among other property certain shares of Pacific Lighting Corporation and a stock dividend was to be declared in 1927 by that corporation whereby Mr. Schmidt would receive an additional 2025 shares of its stock. Mr. Schmidt advised Mrs. Schmidt that the time had come when he should fulfill the promises previously made and that he had decided to transfer to her said 2025 shares of the stock of said corporation. Shortly thereafter, Mr. Schmidt phoned his wife that he had received the certificate for said 2025 shares and he requested that she come to his office in order that he might complete the details of the transfer. She went to his office and he told her that he had been advised that in order to effect the transfer of said stock to her as her separate property, it would be necessary for him to endorse the certificate and that it would also be necessary for her to endorse it as evidence of the fact that she had actually received possession of said certificate. Mr. Schmidt therefore endorsed the certificate and handed it to Mrs. Schmidt who also endorsed the same. He then advised her that said stock was hers as her separate property and that she could have the stock transferred on the books of the corportaion at any time. The stock certificate was then placed in a joint safe deposit box of the spouses to which both had access and it was enclosed in an envelope bearing the initials "M. M. S.," signifying Mrs. Schmidt, which initials were written by Mr. Schmidt.

At the time of the above mentioned transfer in 1927 and at all times until his death, Mr. Schmidt was apparently in excellent health. He nevertheless died very unexpectedly in 1930 at the age of 44 years, his death resulting from a coronary occlusion which occurred while he was attending a dinner party. When said safe deposit box was opened following his death, said certificate was found in the above mentioned envelope bearing Mrs. Schmidt's initials. There were many other stock certificates in said box but none, other than the above mentioned certificate, was so endorsed or was so contained in an envelope bearing Mrs. Schmidt's initials.

Said stock had not been transferred to Mrs. Schmidt on the books of the corporation during Mr. Schmidt's lifetime. Mr. Schmidt also owned stock in said corporation and all dividend checks on all of the stock standing in his name had been sent to him. It nevertheless appears that Mr. Schmidt turned over to Mrs. Schmidt sums of money equal to or in excess of her share of such dividend checks. It also appears that he advised others that said 2025 shares of stock belonged to Mrs. Schmidt and that he consulted with Mrs. Schmidt in 1929 regarding the advisability of selling a portion of her said stock. An order was given by Mrs. Schmidt in 1929 for the sale of 1000 shares thereof but said order was not executed because the stock did not regain the price set in the order.

There was no material conflict in the evidence introduced on the trial. Mrs. Schmidt testified at length and her testimony regarding the affairs of the spouses appears to have been clear and convincing. It was corroborated in many important details by the testimony of others. We are satisfied that the facts and circumstances in evidence were ample to show that there was a sufficient delivery with the intent to make an immediate transfer of ownership, possession and enjoyment (*Shaver* v. *Canfield,* 21 Cal. App. (2d) 734 [70 Pac. (2d) 507]) and that it was ample to show there was no intention that the transfer should take effect in possession or enjoyment only at or after the death of Mr. Schmidt. The mere fact that said stock was not transferred on the books of the corporation during the lifetime of Mr. Schmidt is not of controlling significance. (Civil Code, sec. 324, as said section read in 1927 [see Stats. 1907, chap. 470]; *Crane* v. *Reardon,* 217 Cal. 531 [20 Pac. (2d) 49]; *Crocker* v. *Crocker,* 84 Cal. App. 114 [257 Pac. 611].) Mrs. Schmidt testified to the

effect that she had intended to have said stock transferred on the books of the corporation but she had overlooked having it done. She further testified that she attached no importance to having the transfer made on said books as the certificate was in the safe deposit box to which she had access and that she had implicit confidence in Mr. Schmidt. While the failure to have said stocks so transferred on the books of the corporation was a circumstance which the jury could consider in arriving at the intention of the parties, our only present inquiry is whether there was substantial evidence to show the intention as found by the jury. The positive testimony given by Mrs. Schmidt regarding the actual intention as expressed by the parties at the time of the transfer constituted substantial evidence to sustain the finding of the jury with respect to such intention. While appellants claim in their reply brief that the evidence introduced by respondents on the question of intention was inherently improbable, we find nothing in the record to justify this claim.

Appellants further contend that the trial court erred in "submitting to the jury an issue of law" and that it erred in "giving and refusing instructions on the subject of valuable and adequate consideration." Both of these contentions relate to the issue of consideration. As above stated, we believe that the affirmative answer of the jury on the second issue submitted to it found ample support in the evidence and the finding on said second issue was sufficient in itself to sustain the judgment and order. It therefore follows that the question of whether the trial court committed error in dealing with the issue of consideration is immaterial under the circumstances. It also follows from what has been heretofore said with respect to the evidence relating to said second issue, that the trial court did not err, as contended by appellants, in denying the motions for nonsuit, directed verdict and judgment notwithstanding the verdict.

Appellants also contend that the trial court erred in refusing to permit them to "amend the report of the inheritance tax appraiser." We find no merit in this contention. Subdivision 2 of section 16 of the Inheritance Tax Act, Deering's General Laws, (1931, Act 8443) provided for the filing of the report of the inheritance tax appraiser and the filing of objections. It provided that "any person interested in said proceeding (including the state controller) may file ob-

jections in writing to said report." The procedure prescribed provided for a hearing of any objections to the report and further provided that "Upon the hearing of said objections, said court may make such order as to it may seem meet and proper in the premises." It therefore appears that appellants, acting through the state controller, could have filed objections to said report but there is nothing in the act which gave to appellants or to any interested person the right to amend said report.

A further contention made by appellants is that the trial court erred in refusing another requested instruction. The discussion of this contention requires the statement of certain additional facts which were developed upon the trial. Admittedly, the deceased owned certain shares of the stock of the Pacific Lighting Corporation at the time of his death and admittedly the 2025 shares of said stock in question here also stood in his name on the books of the corporation. The shares owned by deceased were listed in the inventory but the 2025 shares in question here were not so listed. After the death of the deceased, said corporation refused to transfer said 2025 shares to Mrs. Schmidt on the books of the corporation without some form of judgment or order of court. Mrs. Schmidt was the sole beneficiary under the will of the deceased. The price of said stock was declining on the market during the depression period and it was the desire of Mrs. Schmidt to have said stock placed immediately in her name in order that she might deal with it to best advantage without unnecessary delay. Under advice of her counsel, she filed a petition for partial distribution in 1931, seeking a decree of partial distribution covering all said stock including both the stock admittedly owned by the deceased and the 2025 shares in question. The petition was granted, a decree was entered and written consent was given for the transfer of all said shares on the books of the Pacific Lighting Corporation. (Sec. 13 of said act.)

On the trial, appellants requested an instruction that ". . . if the Pacific Lighting Company stock here involved was transferred to Marian S. Dill, formerly Marian S. Schmidt, by any decree of distribution made by a probate court, then such transfer is subject to the payment of inheritance tax." This instruction was refused and we find no

error in such refusal. The trial had proceeded upon the assumption that a valid *inter vivos* transfer had been made. The only question presented for determination was whether such valid *inter vivos* transfer was subject to inheritance tax by reason of the provisions of subdivision 3 of section 2 of said inheritance tax act. When the above mentioned evidence was produced, appellants apparently believed that the transfer might be taxable under subdivision 1 of section 2 of said act under the theory that it was a transfer "by will." As we view the situation, the uncontradicted evidence showed an *inter vivos* transfer and not a transfer by will. The reason for the petition for partial distribution was fully explained by the testimony of counsel for Mrs. Schmidt and the fact the petition was filed and a decree of partial distribution was granted could not change the *inter vivos* transfer into a transfer by will. In any event, the instruction requested was misleading, if not erroneous, under the circumstances. It did not purport to submit to the jury in proper form and under proper advice the question of whether the transfer was an *inter vivos* transfer or a transfer by will. It ignored the explanation of the reason for the petition and decree and apparently made the existence of the decree the sole determining factor. Assuming, without deciding, that appellants were entitled under the evidence to appropriate instructions on the question of whether the transfer was an *inter vivos* transfer or a transfer by will, they are not entitled to a reversal because of the refusal of the trial court to give the above mentioned requested instruction.

Lastly, appellants contend that the court erred in denying the motion to disallow the costs claimed by the objectors. This contention must be sustained. (Subd. 5 of sec. 17 of said act; *Estate of Steehler,* 197 Cal. 67 [239 Pac. 718].)

The order denying the motion to disallow costs and the portion of the judgment awarding costs to the objectors are reversed. In all other respects said judgment and the order modifying the report of the inheritance tax appraiser are affirmed.

Nourse, P. J., and Sturtevant, J., concurred.