ROGERS and ROGERS, Personal Representatives u/w of Solomon Rogers *v.* ROGERS

[No. 185, September Term, 1973.]

*Decided May 17, 1974.*

The cause was argued before Murphy, C. J., and Singley, Smith, Digges and Eldridge, JJ.

*Sheldon H. Braiterman* for appellants.

*Edwin J. Wolf,* with whom were *Eccleston, Seidler & Miller* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The appellee, Florence A. Rogers, widow of the late Solomon Rogers, initiated this action in equity for the purpose of establishing her ownership of 921 shares of capital stock of the First National Bank of Maryland. She claimed that Solomon Rogers, prior to his death, gave her the bank stock as a thirty-first wedding anniversary present. At the time of the alleged gift, on or about July 30, 1970, the stock was worth approximately $31,000. The stock, represented by a single certificate, was still registered in Solomon Rogers's name when he died on May 11, 1971. Florence maintained, however, that the gift took place when her husband delivered the certificate to her and, at the same time, told her that he was giving her the stock as an anniversary present.

The appellant Henry L. Rogers, the son of Solomon Rogers by a former marriage, and personal representative (with his stepmother Florence) under Solomon Rogers's will, contested the suit, arguing that Solomon did not make a gift of the stock to Florence and contending that the stock was part of the estate. Henry Rogers denied that Solomon Rogers had delivered the stock certificate to his wife before his death. Henry principally relied on the fact that the certificate was in Solomon's possession after the date of the alleged gift. If no valid gift to Florence were made, the stock would be divided equally between Florence and Henry by virtue of the residuary clause in Solomon's will.

The chancellor (Turnbull, J.) held that Solomon Rogers had made a valid completed *inter vivos* gift of the stock to his wife and entered a decree in her favor. The chancellor's findings of fact, based on the testimony of several witnesses, were that "Mr. Rogers did indeed hand to Mrs. Rogers, his

wife, a stock certificate for 921 shares of First National Bank of Maryland stock with the intention of making a free, complete and unencumbered gift thereof to his wife"; that the "certificate was physically delivered to Mrs. Rogers"; that sometime after receiving the certificate, Florence Rogers gave it back to her husband for the purpose of having the registration transferred to her; that because of ill health or negligence, Solomon Rogers failed to have the certificate registered in her name; and that Solomon Rogers received back the certificate "in his capacity as Mrs. Rogers's agent for the sole purpose of having the same transferred . . . [on] the books of the company from his name to hers."

On this appeal, Henry Rogers challenges the chancellor's findings as well as the conclusion that there had been a valid completed *inter vivos* gift of the stock. The appellant argues that Solomon Rogers retained a *locus poenitentiae,* or a "dominion over the subject of the gift" or an ability to "undo what he has done." *In re Bauernschmidt's Estate,* 97 Md. 35, 59, 54 A. 637 (1903); *Pope v. Safe Dep. & Tr. Co.,* 163 Md. 239, 249, 161 A. 404 (1932). We disagree. The evidence at the trial supports the chancellor's findings, and, in light of those findings, a valid *inter vivos* gift of the stock was made.

Mary Bruce, a domestic employee of Solomon and Florence Rogers, testified that she was downstairs in the Rogerses' home on July 30, 1970, that Solomon Rogers called Florence and told her to come down as he had a gift for her, that he "presented her with a piece of stock," that he gave it to her for their thirty-first wedding anniversary, that Florence then showed the certificate to Mrs. Bruce, and that it was for 921 shares in the First National Bank of Maryland. Mrs. Bruce further testified that either just before Florence left on a trip to Israel in early August 1970, or shortly after she returned in September 1970, Mrs. Bruce was present when Florence went upstairs and got the stock certificate, gave it to Solomon, and asked Solomon to "take it to the bank and have her name signed on it." Ruth Lombard, Florence Rogers's sister, testified that she was in the Rogerses' home on July 30, 1970, along with Florence,

Solomon and Mary Bruce, that the Rogerses' wedding anniversary was on August 1st, that Florence had the stock certificate in her possession, that Solomon said that he gave it to her for an anniversary present, and that Florence was "jubilant that he was giving her this for an anniversary gift."

Mrs. Hunt, a family friend, testified that she visited Solomon and Florence on August 1, 1970, and that Florence was in possession of the stock certificate at that time. She further testified that, in the spring of 1971, Solomon told her that he had given Florence the First National Bank stock for their last anniversary. Another family friend, Mrs. Samuels, explained that she accompanied the Rogerses to the airport on the day Florence departed for Israel, and at that time Solomon had possession of the stock certificate. Both Mrs. Hunt and Mrs. Samuels testified that Solomon admitted giving the stock to his wife and spoke of his intention to have the certificate placed in her name. According to testimony given by Florence Rogers, she received the gift on July 30, 1970, possessed the stock certificate from then until early August 1970 before her departure for Israel, regained control of it in December 1970, and deposited it in a joint safe-deposit box on May 10, 1971. Mr. Rogers died the next day, May 11, 1971.

On the other hand, Margaret Rogers, the wife of appellant Henry Rogers, testified that she and Henry visited Solomon and Florence on August 1 or 2, 1970, that Florence at that time denied having received an anniversary gift, and that Solomon replied to Florence, "Well, you're going on that trip, and you are lucky you've got that." Margaret Rogers, as well as another witness, testified that Solomon Rogers spoke of the First National Bank stock as if he were the owner. In addition, two witnesses testified to hearing Florence say, after Solomon's death, that Solomon "left nothing for me." Finally, from July 30, 1970, until his death, Solomon continued to deposit the dividend checks from the stock in his individual checking account.

The chancellor resolved this conflicting evidence in favor of the appellee Florence Rogers. He expressly found that the

witnesses Mrs. Bruce, Mrs. Lombard and Mrs. Samuels were "telling me the literal truth" in their testimony. Based upon this evidence, he found that Solomon Rogers intended to make a gift of the stock to his wife Florence, that he actually delivered the certificate to her, that she accepted it, that she re-delivered the certificate solely for the purpose of having the stock transferred on the books of the corporation, and that Solomon held it as her agent for this purpose. This is certainly a case for the application of Maryland Rule 886, specifying that the lower court's findings cannot be set aside unless "clearly erroneous" and that "due regard" must "be given to the opportunity of the lower court to judge the credibility of the witnesses." We are mindful of the principle that, after the alleged donor is dead, the existence of an *inter vivos* gift must be established by "explicit and convincing" evidence and the "clearest proof" in order to diminish the possibility of fraudulent claims. *Schilling v. Waller,* 243 Md. 271, 276, 220 A. 2d 580 (1966); *Schenker v. Moodhe,* 175 Md. 193, 197, 200 A. 727 (1938); *Wholen v. Milholland,* 89 Md. 199, 211, 43 A. 45 (1899). Nevertheless, the evidence was still sufficient to support the chancellor's findings.

The requirements for a valid *inter vivos* gift are an intention on the part of the donor to transfer the property, a delivery by the donor and an acceptance by the donee. Moreover, the delivery must transfer the donor's dominion over the property. There cannot be reserved to the donor a *locus poenitentiae,* which is a power to revoke the gift or a dominion over the subject of the gift. *Snyder v. Stouffer,* 270 Md. 647, 650-651, 313 A. 2d 497 (1974); *Hileman v. Hulver,* 243 Md. 527, 530-531, 221 A. 2d 693 (1966); *Schilling v. Waller, supra,* 243 Md. at 276-279; *Geisler v. Eminizer,* 240 Md. 72, 76, 212 A. 2d 734 (1965); *Berman v. Leckner,* 193 Md. 177, 182, 66 A. 2d 392 (1949); *Pomerantz v. Pomerantz,* 179 Md. 436, 439-440, 19 A. 2d 713 (1941); *Pope v. Safe Dep. & Tr. Co., supra,* 163 Md. at 249; *In re Bauernschmidt's Estate, supra,* 97 Md. at 59. In light of the chancellor's findings, these requirements for a valid gift were met.

In arguing that Solomon Rogers did not relinquish dominion over the First National Bank stock, the appellant

Henry´ Rogers chiefly relies upon Florence's re-delivery of the stock certificate to Solomon and Solomon's possession of it for a considerable period of time. But the chancellor's finding that Florence re-delivered the certificate for the limited purpose of having the stock registered in her name, and that Solomon held it for this purpose as her agent, is dispositive of appellant's contention. Where an actual delivery to a donee occurs, a delivery back to the donor, where the donor is acting as the donee's agent for a limited purpose, does not impair the validity of the gift. Thus, in *Snyder v. Stouffer, supra,* the appellee claimed that he was the owner of certain gold coins held in a safe-deposit box which was registered in the name of a corporation owned by his parents. Testimony produced at trial showed that the appellee received the collection of gold coins from his parents as a present and thereafter returned the coins to his parents for safekeeping. The lower court found that the appellee's parents were merely acting as agents for their son in depositing the coins for safekeeping and that this did not constitute a retention of dominion over the property. In affirming the decision upholding the validity of the gift, we stated (270 Md. at 651): "We think it clear . . . that his return of the coins for safekeeping did not affect the validity of the gifts or his claim of title to them."

Henry Rogers also places considerable reliance on the facts that the stock was registered in Solomon's name, that Solomon did not indorse the certificate, and that after the re-delivery of the certificate to Solomon as Florence's agent, he could have effected a transfer to a bona fide purchaser who would have acquired good title. However, as between Solomon and Florence, these factors do not constitute the retention by Solomon of dominion over the stock or a power of revocation so as to render the gift invalid. With respect to a gift of stock, the requirements that there be delivery and relinquishment of dominion can be met by a physical delivery of the certificate from the donor to the donee. Where such delivery is present, with the requisite intent, it is not necessary that the stock be transferred on the corporate books. *Parry v. Parry,* 231 Md. 584, 191 A. 2d 439

(1963); *Field v. Mollison,* 50 Cal. App. 2d 585, 123 P. 2d 603, 606 (1942); *York's Ancillary Adm'r v. Bromley,* 286 Ky. 533, 151 S.W.2d 28, 32 (1941); *In re Antkowskis' Estates,* 286 Ill. App. 184, 3 N.E.2d 132, 137 (1936); *In re Connell's Estate,* 282 Pa. 555, 128 A. 503, 505 (1925); *In re Estate of Christie,* 436 Pa. 101, 259 A. 2d 156, 159 (1969). Similarly, where there is a manual delivery of the stock certificate coupled with the intent to make a gift, the certificate need not be indorsed. *Crane v. Reardon,* 217 Cal. 531, 20 P. 2d 49, 50 (1933); *Miller v. Williams,* 195 Iowa 1305, 192 N. W. 798, 799 (1923); *Miller v. Silverman,* 247 N. Y. 447, 160 N. E. 910 (1928); *In re Antkowskis' Estates, supra,* 3 N.E.2d at 137; *In re Connell's Estate, supra,* 128 A. at 505. These holdings are reflected in the provisions of the Uniform Commercial Code, which make it clear that between a seller and purchaser of stock (and "purchaser" is defined as including one who takes by gift), the requirement of delivery is met and the transfer is complete upon the physical delivery of the stock certificate even though it is not indorsed. *See* Maryland Code (1957, 1964 Repl. Vol.), Art. 95B, §§ 1-201 (32) (33), 8-301 (1), 8-307, 8-313 (1) (a).

The appellant Henry Rogers also complains about numerous evidentiary rulings made by the chancellor during the trial. We have examined appellant's contentions and find them to be without merit.

> *Decree affirmed.*
> *Estate of Solomon Rogers to pay*
> *costs.*