587 A.2d 481

**Robert H. POPE**

v.

**Debra M. POPE.**

No. 104, Sept. Term, 1990.

Court of Appeals of Maryland.

March 25, 1991.

Motion for Reconsideration Denied April 29, 1991.

Charles J. Muskin, Glen Burnie, for petitioner.

H. Robert Scherr (Scherr, Cole & Murphy, on the brief), Pikesville, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

We are called upon in this case to determine whether the Court of Special Appeals erred in holding that fee simple property, known as 1812 Beach Avenue, Hanover, Anne Arundel County, Maryland (the home), was marital property. We conclude that it did.

The General Assembly dealt with property disposition in divorce and annulment by an act bearing that label, now codified as Maryland Code (1984 Repl.Vol.) §§ 8–201 through 8–213 of the Family Law Article (the Act). Section 8–201(e) defines marital property:

(1) "Marital property" means the property, however titled, acquired by 1 or both parties during the marriage.

(2) "Marital property" does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources.

Section 8–203(a) commands:

In a proceeding for an annulment or an absolute divorce, if there is a dispute as to whether certain property is marital property, the court shall determine which property is marital property.

Section 8–204 requires the court to "determine the value of all marital property." Section 8–205(a) provides in pertinent part:

After the court determines which property is marital property, and the value of the marital property, the court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded.

This section also calls upon the court to determine the amount and method of payment of a monetary award after considering each of ten enumerated factors.

The home in this case was owned by and resided in by Joseph T. Pope, Sr., whose first wife died in 1960. His sons, Robert and Joseph, Jr., known as Tommy, "grew up" in the home. The father remarried in 1974 and took up residence in his wife's home. He said at the trial which provoked this appeal that he felt "very close to both my sons." So, he testified, he decided to give the home to his sons. Robert and his wife, Debra, desired to maintain their residence in the home, but Tommy lived elsewhere. Tommy

preferred to receive cash for the interest given him by his father so he could enjoy his father's largess without further ado. The father consulted an attorney to effectuate his gift to his two sons. The home was appraised at $32,000. The attorney arranged with a bank for a loan to Robert and his wife in the amount of $16,000 to be secured by a mortgage on the home. The attorney prepared a deed conveying the home from the father to Robert and Debra, as tenants by the entireties, and a mortgage from them to the bank in the amount of $16,000. The deed and the mortgage were executed on 9 October 1975. The settlement sheet states that the contract price was $16,000. That amount was turned over to Tommy, thereby satisfying his interest in the home.

In 1977 Robert and Debra refinanced the home in the amount of $22,500 and $6,000 of the proceeds were used to purchase a 1.4 acre lot adjacent to the home. Fee simple title was conveyed to Robert and Debra as tenants by the entireties. In 1985 Robert and Debra borrowed $35,000, secured by a second mortgage on the home, and used the money to improve the home.

All was well until Robert and Debra had a parting of the ways. On 15 May 1989, the Circuit Court for Anne Arundel County granted the parties an absolute divorce. By paragraph 6 of the judgment of divorce, the court awarded Robert

the use and possession of the marital home ... for three years from the date of this Order. The home will then be sold and the net proceeds equally divided between the parties.[1]

Robert's request for a monetary award was denied.

Robert was unhappy with that part of the judgment which covered the disposition of the proceeds from the sale of the home. He expressed his discontent by noting an

---

**1.** The lot was ordered to be sold forthwith, and the net proceeds were to be equally divided between the parties. Paragraph 7 of the judgment. This order is not challenged.

appeal. The Court of Special Appeals affirmed the judgment. *Pope v. Pope*, No. 1274, September Term, 1989, filed 11 June 1990, unreported. Robert turned to us, and we granted his petition for the issuance of a writ of certiorari.

As the Court of Special Appeals saw it, Robert challenged the failure of the [trial] court to determine that half the value of the marital home constituted nonmarital property and to make a monetary award to him based on that value. He claims that he is entitled to receive "a proportionate and fair return on his nonmarital investment," citing *Watson v. Watson*, 77 Md.App. 622, 638 [551 A.2d 505] (1989).

*Pope v. Pope, supra,* slip opinion at 1. The notion of the Court of Special Appeals was that it could not overlook the actual revolution of title to the home. It opined:

Whatever may have been the father's initial subjective intent, the fact is that he conveyed the entire property to Robert and Debra jointly. Robert never, even for a second, owned any interest in the property that Debra did not also own.

*Id.,* slip opinion at 3. That notion is contrary to the Act and the case law of this State.

■ In *Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982), we traced the history of the Act in depth and divined the legislative intent. *Id.* at 61–78, 448 A.2d 916. With respect to the determination whether property was marital property, we rejected "the inception of title theory." *Id.* at 78, 448 A.2d 916. We thereby effectuated the Act's purpose, we said, of ending the inequity inherent in Maryland's old "title" system of dealing with the marital property of divorcing spouses. *Id.* at 79, 448 A.2d 916. We concluded that

under the Maryland Act the appropriate analysis to be applied is the source of funds theory. Under that theory, when property is acquired by an expenditure of both nonmarital and marital property, the property is characterized as part nonmarital and part marital. Thus, a

spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution. Thus, the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportionate and fair return on their investment.

*Id.* at 80, 448 A.2d 916. In *Grant v. Zich,* 300 Md. 256, 477 A.2d 1163 (1984), we quoted at length from *Harper,* and confirmed that the appropriate analysis to be applied in characterizing property as nonmarital or marital is the source of funds theory. 300 Md. at 263 and 265, 477 A.2d 1163. We said that under the statutory provisions

a determination of what constitutes marital property for the purpose of granting a monetary award is not dependent upon the legalistic concept of title. The characterization of property as nonmarital or marital depends upon the source of the contributions as payments are made, rather than the time at which legal or equitable title to or possession of the property is obtained.

*Id.* at 269–270, 477 A.2d 1163. We held that

when characterizing property as marital or nonmarital ... for the purpose of granting a monetary award ..., a presumption of gift does not arise from the titling of property as tenants by the entirety.

*Id.* at 271, 477 A.2d 1163. We applied the teachings of *Grant* in *Dorsey v. Dorsey,* 302 Md. 312, 487 A.2d 1181 (1985). In *Zandford v. Wiens,* 314 Md. 102, 549 A.2d 13 (1988), we reiterated *Grant's* pronouncement that " 'a determination of what constitutes marital property for the purpose of granting a monetary reward is not dependent upon the legalistic concept of title.' " 314 Md. at 109, 549 A.2d 13, quoting *Grant,* 300 Md. at 269–270, 477 A.2d 1163. And we repeated *Grant's* warning that " 'a presumption of gift does not arise from the titling of property as tenants by the entirety.' " 314 Md. at 109, 549 A.2d 13, quoting *Grant*

[300 Md. 256] at 271, 477 A.2d 1163. We cited to *Dorsey v. Dorsey*, 302 Md. 312, 487 A.2d 1181. *Cf. Niroo v. Niroo*, 313 Md. 226, 545 A.2d 35 (1988).

The reasoning of the Court of Special Appeals is distinguished by its obvious reliance on the outlawed legalistic concept of title. The court recognized the father's clear intent to give each of his sons an equal share in the home. There is nothing to show that the father ever intended that his gift to Robert be shared by Debra except the way the attorney drew the deed. The trial judge commented that the bank, through the attorney, "made a shortcut here ... rather than the deed ever going to [Robert] and his brother, it was directly from [the] father to [Robert] and his wife." Thus, the trial judge reasoned, "[Debra] really became a half owner of [Robert's] property right at that time." Therefore, the trial judge concluded, since Robert and Debra were married at the time, she is entitled to half of the net proceeds when the property is sold. The effect was that all of the home was marital property. The trial judge was wrong.

The intermediate appellate court followed the trial judge down this primrose path. The burden was on Debra to establish every element of a gift, and the proof must be by clear and convincing evidence. *Dorsey*, 302 Md. at 318, 487 A.2d 1181. The only evidence, other than the titling, tending to show that Debra was entitled to a half-interest in the home was her flat assertion that she and Robert "purchased" the home from the father. As we see it, Debra suggests that the "shortcut" in the conveyancing translated into a "sale" by the father and a "purchase" by Robert and her of the entire interest of the father, albeit for only half of the appraised value. Then, she avers, the father made a gift to Tommy of the $16,000 she and Robert paid the father for the home. We do not find this scenario to be persuasive in the circumstances. Furthermore, as we have seen, the conveyance to Robert and Debra as tenants by the entireties carried no presumption of a gift, either by the father to Debra or by Robert to her. It is not disputed that

the father's steadfast desire was to make a gift of the home to Robert and Tommy in equal shares. It is clear that, under the established law of this State, the father's intent was not defeated by the manner in which the title to the home became vested in the names of Robert and Debra. We hold that an amount representative of Robert's contribution of $16,000 was not marital property because it was acquired by Robert by gift from a third party in accord with § 8–201(e)(2)(ii) of the Act.[2]  Therefore, we order that

THE JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED;

THE CASE IS REMANDED TO THAT COURT WITH DIRECTION:

TO VACATE THAT PART OF PARAGRAPH 6 OF THE MAY 15, 1989 ORDER OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY WHICH COMMANDS THAT "THE NET PROCEEDS" FROM THE SALE OF THE HOME BE "EQUALLY DIVIDED BETWEEN THE PARTIES;" AND

TO REMAND THE CASE TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS IN ACCORD WITH THIS OPINION.

COSTS TO BE PAID IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS BY THE RESPONDENT.

---

2.  We call the attention of the trial court to *Grant v. Zich,* 300 Md. 256, 276 n. 9, 477 A.2d 1163 (1984), for guidance in calculating the non-marital and marital interests in the home.